(Cuyahoga County Court of Common Pleas.)

THE VAN CLEVE GLASS CO. *v.* J. T. WAMELINK ET AL.

*The new Mechanic's Lien Law.*—The act of the General Assembly of April 13, 1894, (91 Ohio Laws, 135), amending the mechanic's lien law of Ohio is constitutional.

(Decided January, 1895.)

NOBLE, J.

The legislature last winter materially changed what is known as the mechanics' lien law. Section 3184, as amended in 1892, and found in Ohio Laws, 90, 373, (which gives a lien for labor or material furnished by virtue of a contract with the owner or his authorized agent, upon the material and machinery furnished, and upon the owner's interest in the lot or land on which the same may stand), was so amended as to give a like lien for labor and material furnished by virtue of a contract with "or at the instance of the owner thereof, or of his agent, *trustee, contractor or sub contractor.*"

Section 3188 was amended so as to postpone the original contractor's lien to the labor and material liens. Sections 3193, 3194 and 3195 provide how a lien shall be perfected and what shall be done. Section 3197 provides that the owner may notify the lien owner to commence suit, and if he fails to commence within sixty day, the lien shall be null and void. Section 3200 provides for the settlement of disputes. Section 3185a provsdes that in all cases where labor or material is furnished by any person other than the original contractor, the lien shall not exceed the actual value thereof; and that the aggregate of liens for which the property may be held shall not in the absence of fraud or collusion between the owner and contractor, exceed the amount of the price agreed on between the contractor and the owner for such labor, material or machinery, unless it shall be made to appear that it was an unreasonably low price. In that case the court is authorized to ascertain the difference between such price and what would be a fair and reasonable one, and the labor and material shall have a lien to the amount of such fair and reasonable price.

The act, by its terms, repeals a large part of the old act, to-wit sections 3184 as amended in 1892, and sections 3188, 3193, 3194, 3195, 3196, 3197, 3198, 3199, 3200, 3201, 3202, 3203 and 3204. As it now stands, instead of subrogating the lien of labor and material furnished the contractor, to the contractor's rights by virtue of his contract with the owner, and the state of the account existing under it, the act, it is claimed, now gives a *direct lien as an incident to the power of the contractor, as the owner's agent, to bind him.*

This action is begun to enforce a lien for material furnished since the passage of this law. A demurrer is interposed, and an attack is thereunder made on the constitutionality of the law. It is claimed to violate the clause of the constitution of the United States prohibiting the taking of private property without due process of law.

It is urged with much force that this act undertakes to appropriate property of the owner for the benefit of a person with whom he has made no contract; that the owner may have had no notice of the claim till after he has paid the original contractor in full, and that the result might be that he would have to pay double what he had originally contracted to pay.

This kind of legislation has been under review in the courts of last resort in many states. In Jones on Liens, second volume, sections 1304, 1305 and 1306, and note, a large number of authorities are brought to-

gether, and the author deduces therefrom the following statement of the law : "The constitutional validity of such statutes securing liens to sub contractors and others furnishing labor or material to a contractor irrespective of the state of the account of the owner and contractor is well established ; and it is established upon the ground that such statutes recognize the lien as an incident to the contract of the owner with the contractor, such contract being evidence of the authority of the contractor to charge the owner's property with liabilities incurred by him in performing his contract." There can be very little doubt that the doctrine is well and accurately stated. In a case in Wisconsin, reported in the 12 Wisc. 67, *Streubel* v. *Mil. & Miss. R. R. Co.*, the learned chief justice of the Supreme Court took the broad ground that the power of the legislature, as to all future transactions, to regulate and control contracts, by prescribing the manner in which they should be made, by declaring what future voluntary acts of parties in relation to the particular subject-matter shall be deemed a contract, and, if it pleases, by creating implications from said acts from which certain declared obligations shall flow, can not be denied or doubted. The Supreme Court of Wisconsin, in a subsequent case decided at the January term, 1891, impliedly held that the doctrine was a little too broadly expressed, but still held squarely the constitutionality of such legislation.

The Supreme Court of Minnesota has also had like legislation in review, and holds substantially that such laws are incumbrances upon the owner's title, and can only be created by his consent or authority ; that the statute annexes the lien as an incident to the contract of the owner with the contractor, and the contract is the evidence of the authority to charge the building and land with liabilities incurred by him in performing his contract.

In Maine, like legislation is implied, 40 Maine Reports, 409, *Atwood* v. *Williams*.

In Pennsylvania, in the case of of *White* v. *Miller*, 18 Penn. St. 52, the Supreme Court uses this language : " As soon as owners of land cease to be their own builders, they put it into the power of the person employed by them, to occasion losses to mechanics and material men, which they ought not to bear ; and it was to remove this mischief that the legislature established the principle that materials and labor are to be considered as having been furnished on the credit of the building, and not of the contractor."

Although it may be true that the property of the owner is subject to a lien for the benefit of a person with whom he has made no contract, it can hardly be claimed that the fact *necessarily* makes the act invalid. It is supposed that the owner knows the provisions of the law when he makes his contract, and that he makes it with due regard thereto. Contracts must be considered and interpreted according to existing laws in relation to the subject. 91 U. S. C. R. Rep. 266.

And the law incorporates into the owner's contract the right to subcontractors and material men to a lien. The owner makes his agreement as to a matter wherein the law declares certain things are incident to it ; and he cannot be held to object to these incidents after the materials and work have been furnished by third parties.

Again, it is true that the owner may thus be compelled to pay twice ; but it is not such a necessary consequence as he may not fully protect himself against. He may withhold pay from the contractor till after the expiration of the time limited in the act ; or he may see that everything is paid up, as the work progresses ; or he may indemnify himself by a bond. True, this is compelling the owner to put himself to a great deal of trouble and expense, perhaps ; but we fail to see how that affects the constitutionality of the law. On this point the Missouri Supreme Court uses the following language in the case of *Henry & Coatsworth Co.* v. *Evans*, 97 Mo. 59 : " The

aim seems to be to protect those whose material or labor has enhanced the value of the property, against the business misfortunes or possible frauds of any middle man at whose instance they furnished the same.  It is made the interest of the owner, for the protection of his property from liens, to see that all valid debts of that nature, are discharged by those who incur them. The law-makers considered that by the exercise of ordinary prudence, the owner would be in a better condition to guard against loss under this law, than sub-contractors would be without the law.  The owner may stipulate with the contractor to defer payment till the time is past for filing their liens; or to pay the sub-contractors himself; or to take security or other suitable steps, as circummstances may require, for the protection of himself."

Other cases could be cited in support of this position, and the court is clearly of the opinion that, however obnoxious the law may be to the rights of property owners, its operation cannot be defeated under the claim of want of constitutional power to pass it.  Unless the enactment is in violation of some principle of constitutional law, it must stand.

The court, therefore, is constrained to overrule the demurrer, and it is accordingly done.

*White*, *Johnson* and *McCaslin*, for plaintiff.

*George A. Groot*, *Esq.*, for defendant.